# MEMORANDA

OF

# CASES NOT REPORTED IN FULL.

JOSEPH THORN, Plaintiff, v. NEW YORK CITY ICE COMPANY, Respondent.

*Negligence — duty of a master to furnish proper implements for his employees to use — he is not bound to furnish the best known or conceivable appliances — effect of the servant voluntarily incurring a risk.*

Motion for a new trial on exceptions ordered to be heard at the General Term in the first instance after a nonsuit had been ordered at the Greene Circuit.

The plaintiff had worked for the defendant in the ice business for two or three winters. His particular business had been what is called canal work. This consisted in walking upon the solid ice in the river and pulling or pushing cakes of ice along the canal or channel by means of a long handled hook. In storing ice in the houses and in stacking it in a stack outside the houses, the workmen used a shorter hook or one with a shorter handle. The plaintiff had worked for parties other than defendant at storing ice in houses, or in drawing it out from the houses. There seemed to be no difference in the nature of the work of storing ice, whether it is stored within a house or in a stack. In either case the cakes of ice are drawn or pushed from the place of delivery to their proper places in the room or in the stack. Although it is stated that this work of storing the ice required a sharper hook than that which is used in the canal work.

The plaintiff was directed one day to go and work on the stack of ice which had been commenced. He started to go to Kelly, whom he called the boss of the stack, and to ask for a hook, when the paymaster by the ice house, Huntman, called him back and said, "there's a hook, you can take," and gave him a hook and said he would have to use it till he could get a better. He commenced working with a man named Mattice; the men working in

couples. Mattice said he would not haul with plaintiff if he used that hook. Plaintiff asked why? Mattice said he should sharpen it, for he might hurt somebody or himself. Plaintiff said he could not file it. Mattice said he should get some one, and pointed out one of the carpenters. Plaintiff went to this carpenter and had his hook filed, working with the carpenter's hook until his own was returned. The carpenter said he had done the best he could; that it was not filed right the first time. Plaintiff then hauled ice for two hours and a half. As he and his companion were hauling a cake it struck against another which was higher. His companion took his hook out and reached under the cake and raised it. Plaintiff struck his hook in the cake three or four times; thought it was safe; turned to pull and his hook gave way and he fell. In trying to prevent himself from going off the stack, he fell off the stack and was injured. They were then hauling the cake to the north end of the stack. He fell off a little north of the center. Mattice testified that either the hook slipped or the ice broke. The stack was then six or eight feet high. The plaintiff claims that the defendant was negligent in not furnishing a sharper hook and also in not building some barrier around the stack which would prevent men from falling off. The judge granted a nonsuit and plaintiff appealed.

The court at General Term, said : " It seems to us that this case falls within the rule laid down in *Marsh* v. *Chickering* (101 N. Y., 396). The instrument or tool furnished the plaintiff was an ordinary implement, of which he had full knowledge and comprehension. It was not a complicated piece of machinery. He suspected that it was dull and was advised by Mattice to have it sharpened; he had it sharpened and used it without trouble for over two hours. That it then lost hold is not shown to have been owing to dullness, since a breaking of the ice would have caused the same result. If the hook was not sharp enough, the plaintiff had as good opportunity to know this as the defendant. And further it does not appear that even with a very sharp hook the ice may not break. One witness explains, that the benefit of a sharp hook is, that you are generally sure of keeping hold of the ice. Nor does it appear that this hook was not reasonably safe and suitable. The defendant was not bound to furnish the best known or conceivable appliances. (*Burke* v. *Witherbee*, 98 N. Y., 562.)

As to the neglect to put up a barrier around the ice stack, it appears sometimes that in constructing these stacks, pieces of wood are put in between every three courses or thereabouts. To these, uprights are fastened, and, in the uprights boards are nailed. The principle object of this is to protect the ice from the weather. Of course, if carried above the course of ice on which the men are working, this structure forms to some extent a barrier. In the present case, this kind of structure had been commenced, but the boards were not yet above the course of ice. This was visible to the plaintiff. He knew exactly the peril if any there was. He was not working at a dangerous height, and if there was a risk of falling he knew and assumed it. (*Sweeney* v. *Berlin & J. E. Co.*, 101 N. Y., 520, and cases cited at page 524.) Further the plaintiff himself says that when he got so near the edge that it was dangerous, he would turn and shove the ice to its place instead of hauling it. If he had done so at this time the accident could not have happened, for in order that he should fall from the stack by the slipping of the hook or the breaking of the cake, he must have been hauling the cake and must have been near to the edge.

"It seems to us, then, that there was no negligence shown in the defendant for which the defendant was liable; and that whatever risk the plaintiff incurred was well known to him."

*R. E. Andrews*, for the plaintiff.

*Frank H. Osborn*, for the defendant.

Opinion by LEARNED, P. J.; LANDON and WILLIAMS, JJ., concurred.

Motion for new trial denied, and judgment ordered for defendant with costs.